# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| PATRICK MCKINLEY,  *Plaintiff* § § § § | |
| § | SA-23-CV-01043-XR |
| -vs- § § | |
| MARTIN O'MALLEY, SOCIAL SECURITY COMMISSIONER;  *Defendant* § § § § | |

## ORDER ON REPORT AND RECOMMENDATION

On this date the Court considered United States Magistrate Judge Richard B. Farrer's Report and Recommendation ("R&R"), filed July 24, 2024, recommending that the Court affirm the decision of the Administrative Law Judge ("ALJ") denying Plaintiff Patrick McKinley's application for disability-insurance benefits under Title II of the Social Security Act. ECF No. 20.

## BACKGROUND

Plaintiff Patrick McKinley seeks review of the ALJ's second decision denying his claim for disability benefits for the four-month period between August 19, 2014 and December 31, 2014, following remand in 2021. *See McKinley v. Kijakazi*, No. 5-20-cv-703-FB-RBF, 2021 WL 3486346 (W.D. Tex. August 9, 2021), *report and recommendation adopted*, 2021 WL 8443998 (W.D. Tex. Aug. 24, 2021).

McKinley is a military veteran who initially alleged disability starting January 23, 2013, due to various ailments including depression, anxiety, sleep apnea, high blood pressure, and diabetes. ECF No. 9 (Social Security Transcript, hereinafter "Tr.") at 189. In August 2014, the Commissioner determined for the first time that McKinley was not disabled. *See* Tr. at 13, 821. Because McKinley did not appeal that finding, it became final. *See* Tr. at 13–14.

**McKinley's 2018 Application for Disability Benefits**

McKinley pursued a second claim before the Commissioner in 2018, which was denied in May 2019.[1] Tr. at 863–76. Included in the evidence before the ALJ was a finding by the United States Department of Veterans Affairs ("VA") that McKinley was 70% disabled. Tr. at 180, 184. The VA paid McKinley at the rate of 100% disability, however, due to his inability to obtain or maintain employment as of January 23, 2013. Tr. at 180, 184, 827.

A licensed clinical social worker, Howard Walker, began treating McKinley as early as 2012.[2] In a 2018 statement, Walker observed that McKinley was unable to work, took medication for his depression and anxiety, and was on a fixed income. Tr. at 792. But Walker also noted that McKinley managed money well and cared for his two young daughters as a single parent. *Id.*

The ALJ also considered McKinley's own statements in connection with his claims. As pertinent here, McKinley stated he had difficulty being around others and desired to be alone due to anger problems. Tr. at 824. In an initial decision with respect to McKinley's claim for the 4-month period in 2014, the ALJ at step two of the sequential analysis determined that none of McKinley's alleged impairments significantly limited his ability to perform basic work-related activities for the twelve consecutive months before the relevant four-month period. Tr. at 16–19.

---

[1] Two state-agency physicians also considered McKinley's case in 2018, in connection with his second claim for benefits for the four-month relevant period, which ended nearly four years prior to their examination. Neither "believed there was sufficient evidence to assess . . . McKinley's resulting limitations [i.e., his Residual Functional Capacity] from his severe depressive disorder." ECF No. 14 at 11; Tr. at 59–60, 69.

[2] The record does not clearly establish precisely when Walker began treating McKinley. *See* Tr. at 826 ("[Walker] noted he had been seeing the claimant since February 2013"; "In a statement dated September 8, 2021, . . . Walker noted that he treated the claimant for over five years or more."), Tr. at 828 ("The statements of . . . Walker written in . . . 2012 are found not persuasive."; "The list of VA outpatient encounters reflects that the earliest the claimant was seen by . . .Walker was June 25, 2015.").

This discrepancy is largely immaterial to the Court's analysis because, as the ALJ found, "[t]he record evidences little to no contact or care provided by . . . Walker during the relevant time period of August 19, 2014 through December 31, 2014." Tr. at 828. Moreover, to the extent earlier treatment informs the issues before the Court, the Court has considered it, as did the ALJ after remand. *See* Tr. at 827–28.

The ALJ therefore determined that McKinley did not have a severe impairment or combination of impairments. *Id.* This concluded the analysis, and the ALJ found McKinley not disabled. *Id.* McKinley appealed to the Social Security Appeals Council, which rejected his appeal. *Id.* at 1–6.

**2021 Reversal and Remand of the ALJ's Decision on Appeal**

On appeal to the district court, McKinley argued that: (1) the ALJ did not evaluate Walker's opinion in accordance with Social Security regulations; (2) the ALJ impermissibly substituted his own lay opinion in place of Walker's; (3) the ALJ failed to develop the record before halting the analysis at step two; and (4) the ALJ's finding that McKinley's conditions were well controlled with medication was unsupported by the record and required further development. Tr. at 895.

Magistrate Judge Farrer rejected McKinley's first two arguments because Walker's record evidence was not a "medical opinion" as defined by Social Security regulations. Tr. at 896. Still, the Magistrate Judge recommended reversal and remand because the ALJ's finding that McKinley's impairments were non-severe did not "jibe with the scant record or binding case law," resulting in the ALJ "prematurely terminating the sequential analysis" at step two, a harmful error. Tr. at 896. His recommendation contained specific instructions for remand:

> To the extent appropriate, the ALJ should . . . re-evaluate all the medical evidence to determine whether, and to what extent, a residual-functional-capacity assessment is appropriate. Before reaching a decision, the ALJ should ensure that he has sufficient facts regarding McKinley's impairments and work-related abilities during the relevant period to support an informed decision. If necessary, the ALJ should hold another hearing and obtain new vocational expert testimony.

Tr. at 904 (internal citations omitted). Judge Biery adopted Judge Farrer's report and recommendation without alteration. *McKinley v. Kijakazi*, No. 5-20-cv-703-FB-RBF, 2021 WL 3486346 (W.D. Tex. August 9, 2021), *report and recommendation adopted*, 2021 WL 8443998 (W.D. Tex. Aug. 24, 2021).

3

**2022 Remand Proceedings and Subsequent Denial of Benefits**

Before the remand hearing on July 5, 2022, McKinley provided additional evidence, including various hospital records and a 2021 opinion from Walker about McKinley's capacity to work. Tr. at 1120–1356. McKinley attended the hearing, along with his non-attorney representative and a vocational expert. Tr. at 820, 838.

In August 2022, the ALJ issued a written opinion applying the five-step analysis and again determined that McKinley was not disabled for the relevant four-month period. Tr. at 817–30.

At step one, the ALJ found McKinley had not engaged in substantial gainful activity. Tr. at 823.

At step two, the ALJ found that, during the relevant period, McKinley had the severe impairments of "diabetes mellitus, hypertension, major depressive disorder and anxiety." Tr. at 823.

At step three, the ALJ found that McKinley's limitations did not meet the listed impairments under the regulations. Tr. at 823. The ALJ further found, based on the vocational expert's testimony at the remand hearing, that McKinley "had the Residual Functional Capacity to perform medium work as defined [under the regulations]" with the limitation of "no more than occasional interaction with coworkers and the general public." Tr. at 825. In making this finding, the ALJ cited evidence showing that McKinley's "major depressive disorder was noted to be in partial remission," that there were no treatment notes from Walker for the relevant period, and that prior state-agency administrative findings were not medical findings and could not be considered persuasive. Tr. at 827–28 (cleaned up).

The ALJ also considered McKinley's own statements about his condition and his difficulties with social interaction, noting certain points at which McKinley's statements were

inconsistent or in tension with his other statements.³ Ultimately deciding to give "the claimant the benefit of the doubt," the ALJ found find he had a "moderate limitation of interacting with others." Tr. at 824.

At step four, the ALJ determined McKinley had "no past relevant work." Tr. at 828.

And finally at step five, the ALJ concluded "there were jobs that existed in significant numbers in the national economy that [McKinley] could have performed." Tr. at 828.

After the ALJ issued his written decision, McKinley filed exceptions, Tr. at 1053–54, which the Social Security Appeals Council denied, rendering the ALJ's August 23, 2022, decision the Commissioner's final. Tr. at 809–11. McKinley then once again timely sought review in this Court. *See* ECF No. 1.

**The Magistrate Judge's 2024 Recommendation to Affirm the Denial of Benefits**

The Magistrate Judge concluded that McKinley failed to carry his burden of proof following remand, that the ALJ did not err in failing to further develop the record at the most recent hearing.

In applying the five-step sequential analysis mandated by the Social Security regulations, "[t]he claimant bears the burden of proof on the first four parts of the inquiry," and "[t]he burden shifts to the [ALJ]" at step five. *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (citation omitted). The regulations contain specific instructions for claimants about their burden:

> In general, you have to prove to us that you are . . . disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are . . . disabled. This duty is ongoing and requires you to disclose any additional related evidence about which you become aware. This duty

---

³ *See, e.g.*, Tr. at 827 ("While the claimant testified at the most recent hearing that his two daughters lived on and off with their mother, and on and off with him, he previously testified that he has had full custody of his children since 2006. He also previously testified that he had been taking care of his children since they were babies. The claimant also testified at the current hearing that he had problems being around others, and removed himself from other[s] to make sure he was safe. However, he also testified that he was active in his church, with activities such as teaching Sunday school and helping cook for church events.").

> applies at each level of the administrative review process, including the Appeals Council level if the evidence relates to the period on or before the date of the administrative law judge hearing decision. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 404.1512(a)(1) (2017) (internal citation omitted). Further, "[t]he evidence in [the] case record" presented by the claimant "must be complete and detailed enough to allow [the ALJ] to make a determination or decision about whether [the claimant is] disabled." *Id.* § 404.1512(a)(2).

While a claimant bears this burden, the ALJ is not without responsibility in the process, even prior to reaching step five of the sequential analysis. The regulations require the ALJ to "develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [the claimant filed her] application." *Id.* § 404.1512(b)(1). To meet this requirement, the ALJ is directed to "make . . . request[s] for evidence from medical source[s]" covering the period in question, and to request the claimant "attend one or more consultative examinations" at the ALJ's expense if needed. *Id.* § 404.1512(b)(1)–(3).

The Magistrate Judge found that, following remand, McKinley did not meet his burden under the regulations: he presented no evidence that would establish his disability at steps one through four of the sequential analysis, and, on appeal, points to no medical evidence that the ALJ failed to consider or incorrectly assessed at the second hearing. While McKinley cited the state-agency physicians, VA findings, Walker's opinions, and his own testimony as evidence that he was unable to work during the period in question, the ALJ was at liberty to discount this evidence.[4]

---

[4] *See* 20 C.F.R. § 404.1504 (2017) ("[A] decision by any other governmental agency [including the VA and state agencies] about whether you are disabled . . . is not binding on [the Commissioner] and is not [a] decision about whether you are disabled . . . under our rules."); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (holding, "[i]t was within the discretion of the ALJ to discount [the applicant]'s complaints of pain"); *see also* Social Security Program Operations Manual System (POMS) DL 24501.046 – Evidence Evaluation (noting, "[i]f any of the evidence is inconsistent, but there is sufficient evidence to make a determination, [the ALJ should] consider all the evidence and make a determination supported by the available evidence").

The inconsistencies and statements in McKinley's own testimony describing his ability to perform daily functions, *see* Tr. at 827, satisfied the Magistrate Judge that no reversible error occurred.

The Magistrate Judge acknowledged certain concerns with the ALJ's post-remand reasoning and residual-functional-capacity ("RFC") assessment.[5] Still, the Magistrate Judge found that the issues he identified would not warrant reversal, alone or in combination, because McKinley pointed to no evidence beyond his own statements that could support a different RFC finding: "The relevant period is just too short, and the records pertinent to the period are too scant." ECF No. 20 at 8.

Addressing McKinley's complaint that the ALJ should have requested a medical source statement "describing types of work [McKinley was] still capable of performing despite his condition" or other medical evidence to fill out McKinley's record, ECF No. 14 at 10, the Magistrate Judge concluded that any additional efforts to develop a record supporting McKinley's disability for a four-month period during 2014 would be futile:

> [F]urther record development by the ALJ would not have changed the outcome for McKinley. The ALJ allowed and considered additional evidence submitted by McKinley on remand. When asked at the April 11, 2024, hearing before this Court, McKinley could not point anything in the record—new or old—that would mandate a different finding by the ALJ. Instead, McKinley pointed only to evidence that the ALJ was permitted to credit or discredit.
>
> . . .

---

[5] First, the Magistrate Judge was concerned by the ALJ's vague statement that "throughout the period under consideration, the claimant's major depressive disorder was noted to be in partial remission." Tr. at 828 (internal citation and quotation omitted). The hospital records cited by the ALJ do not provide clarity as to what a major depressive disorder being in "partial remission" means, let alone what it might mean for a claimant's ability to perform work. *See* Tr. at 275–418. Second, the Magistrate Judge was concerned that ALJ's unexplained citation to conflicting evidence about when Walker started treating McKinley cast doubt on the thoroughness of the analysis. *See supra* n.2.

Still, the Magistrate Judge found that neither of these issues would support reversal and, because there is no evidence to support a different RFC finding, McKinley was not prejudiced by them. ECF No. 20 at 1, 9. In fact, when pressed at the last hearing before the Magistrate Judge, McKinley could point to no record evidence, from his initial hearing or on remand, that would have resulted in a different RFC finding.

> [T]he fatal flaw in McKinley's case is largely one of timing. The relevant period is a four-month and twelve-day stretch of time from nearly ten years ago. . . . **[I]t is virtually impossible to imagine how any new evidence could be produced that would cover the relevant period. The record simply does not support McKinley's contention that remand would result in new evidence supporting a more favorable outcome.** Indeed, McKinley points to no missing evidence covering the relevant period. And even if on (another) remand the ALJ ordered a doctor to examine McKinley, surely too much time has passed for that doctor or the ALJ to make an informed decision about McKinley's condition in 2014; any physician tasked with that duty would almost certainly ask to see the relevant records from that period.
>
> In sum, **the ALJ's decision not to further develop the record here after considering McKinley's additional evidence was reasonable. Holding otherwise would turn the case into a recursive loop of remands for further development followed by findings that no further development is possible under the unique facts presented.**

ECF No. 20 at 11–12.

While reasoning that the "shortfall [was] attributable to McKinley's failure to meet his burden to show disability,"[6] the Magistrate Judge found that the ALJ's ultimate denial of benefits was supported. ECF No. 20 at 14.

## DISCUSSION

**I.      Legal Standard**

Where the report and recommendation has been objected to, the Court reviews the Magistrate Judge's recommended disposition *de novo* pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1). In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the

---

[6] As the Commissioner conceded in a hearing before the Magistrate Judge, it would have been helpful if the ALJ had explained that the record evidence was insufficient to find McKinley disabled during the relevant period, and that no additional evidence could be obtained that would inform the determination—especially given the limited nature of the medical records, extremely short relevant period of disability, and length of time since the relevant period closed. *See* ECF No. 19.

8

evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (the court is not to reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez*, 64 F.3d at 174.

**II.    Analysis**

Plaintiff raises several related objections the R&R, arguing that (1) the ALJ was required to order a medical source statement under *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1999), (2) the Magistrate Judge improperly applied issue forfeiture to McKinley's *Ripley* argument, and (3) the R&R's speculation about future proceedings could not cure the ALJ's error. *See* ECF No. 21.

### A. The ALJ was not required to order a medical opinion

McKinley asserts that the ALJ incorrectly determined his RFC limitation of "no more than occasional interaction with coworkers and the general public," because the ALJ did not rely on a medical opinion and discounted McKinley's own testimony.

To begin, Plaintiff's insistence that the ALJ base his decision on medical opinions cannot be reconciled with the new regulatory framework, which does not require the ALJ to defer to any medical opinion. *See* 20 C.F.R. 404.1520c(a). And even under the prior framework, the Fifth Circuit's decision in *Ripley* made clear that the ALJ *could* determine the RFC without a specific medical opinion so long as substantial evidence supported the determination. 67 F.3d at 557. The Fifth Circuit expressly stated that the absence of a medical source statement describing the types of work that the applicant is still capable of performing does not, in itself, make the record incomplete, and the proper inquiry focuses on whether the decision of the ALJ is supported by substantial evidence. *Id.*

"It is the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion." *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003). Thus, the ALJ is not required to have a medical opinion that matches his RFC determination, and can rely on medical information provided by the claimant to determine his RFC to work. *See Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (affirming the ALJ's RFC determination based on medical information provided by the plaintiff, which ran contrary to the medical opinions, noting that the RFC determination is the sole responsibility of the ALJ).

The ALJ's RFC analysis complied with the regulations. The ALJ's role was to "assess [McKinley's RFC] based on all the relevant medical and other evidence . . . . including limitations that result from [his] symptoms, such as pain, provided by [McKinley]." 20 C.F.R. §

10

404.1545(a)(3) (2012) (internal citations omitted). Here, there was no relevant medical evidence covering the applicable period, and the ALJ properly based his RFC limitation on McKinley's partially credited testimony. The ALJ considered McKinley's statements in formulating an RFC finding. For example, the ALJ considered McKinley's statements that he "has difficulty getting along with others due to anger problems," that he "removed himself from being around others, and that he wanted to be by himself." Tr. at 824. In formulating the RFC assessment, the ALJ noted that McKinley's statements were in some tension with other evidence because, for example, "[t]here [wa]s no evidence that [McKinley] had difficulty getting along well with providers or medical staff." *Id.* The ALJ has satisfied his burden to explain his reasons for partially discrediting McKinley's subjective complaints and supported his decision with substantial evidence.

### B. McKinley did not satisfy his burden on appeal

McKinley complains about statements in the R&R suggesting that he forfeited his right to demand a medical source opinion on appeal because he did not ask for one on remand. *See, e.g.*, ECF No. 20 at 10 ("McKinley did not press for a medical-source statement when back before the ALJ and only now raises it as a basis to remand once again. The time for McKinley to raise this issue was on remand, not again here in this Court after having remained silent."); *id.* (pointing out that the instructions in the previous R&R directing "the ALJ [to] ensure that he has sufficient facts regarding McKinley's impairments and work-related abilities during the relevant period to support an informed decision" put McKinley on notice of the relevant fact issues on remand).

While the Supreme Court has "cautioned against forfeitures arising from non-adversarial agency proceedings," *Ambriz v. Kijakazi*, No. 5-20-CV-00727-RBF, 2022 WL 855987, at *6 (W.D. Tex. Mar. 23, 2022) (citing *Carr v. Saul*, 593 U.S. 83, 89–90 (2021)), courts in the Fifth Circuit are also cautioned to consider "concerns that claimants might lie behind the log or invent

11

new arguments only after the ALJ has ruled." *Id.* (citing *Carey v. Apfel*, 230 F.3d 131, 145–46 (5th Cir. 2000)).

In the Court's view, the Magistrate Judge's statements sounding in forfeiture bear on McKinley's ability to support his arguments on appeal, not his ability to raise them in the first place. To succeed on appeal, it is McKinley's burden to show that he was prejudiced by the ALJ's failure to demand a medical source statement. *Ripley*, 67 F.3d at 557. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Id.* at 557 n.22 (citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)).

Here, McKinley has not identified any evidence likely to be elicited from a medical source opinion that might change the outcome of the ALJ's RFC analysis. That McKinley failed to request such an opinion on remand merely underscores the dearth of evidence—at any stage of these proceedings—the ALJ would have made a different RFC determination with the benefit of a medical opinion. McKinley faults the R&R for engaging in "speculation" about what would happen in a hypothetical remand, but, of course, the Magistrate Judge was only forced to engage in such speculation because McKinley failed to show that the "additional evidence" in a medical opinion "might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22.

In short, the ALJ's determination is supported by substantial evidence, and McKinley has failed to show that he was prejudiced by any of the alleged deficiencies in the proceedings before the ALJ.

## CONCLUSION

For the foregoing reasons, the recommendation of the Magistrate Judge is **ACCEPTED**, and the decision of the Commissioner is **AFFIRMED**.

The Clerk is **DIRECTED** to close this case.

It is so **ORDERED**.

**SIGNED** this 27th day of March, 2025.

                                                            _____
                                                            XAVIER RODRIGUEZ
                                                            UNITED STATES DISTRICT JUDGE